UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| MARY BURTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06-cv-1242 |
| v. | ) | |
| | ) | |
| CITY OF PEORIA, ILLINOIS, | ) | |
| a municipal corporation; | ) | |
| MIKE JOHNSON, BADGE # 589, | ) | |
| in his individual capacity; | ) | |
| CHRIS HOPKINS, in his individual | ) | |
| capacity; JOHN CLIFT, in his | ) | |
| individual capacity, | ) | |
| KELLY O'KEEFE; in his individual | ) | |
| capacity; and JOHN MOORE, in his | ) | |
| individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**O P I N I O N  &  O R D E R**

Before the Court is Defendants' Joint Motion for Summary Judgment, filed on June 6, 2008 (Doc. 50). Plaintiff filed a response on July 13, 2008 (Doc. 53), and Defendants replied on July 30, 2008 (Doc. 55). For the reasons stated below, Defendants' motion is GRANTED, in part, and DENIED, in part. Because the Court disposes of Plaintiff's remaining federal claims in this Opinion, this case is terminated and Plaintiff is advised to raise her supplemental state law claims in state court.

**FACTUAL BACKGROUND**

This is a civil rights case, including supplemental state law claims of common law trespass and false imprisonment, stemming from a dispute over the ownership of a driveway immediately east of Lot 33 of Darst and Comstock's Subdivision in the City of Peoria, Illinois. Lot 33 is also commonly known as 1333 East Nebraska Avenue. On August 20, 1968, the Peoria City Council passed an ordinance ("1968 Ordinance") that vacated and closed what was then known as North Springdale Street, from East Nebraska Avenue to East Frye Avenue in the City of Peoria. North Springdale Street ran north-south in direction, and a portion of the street was immediately adjacent to the east side of Lot 33. Immediately to the north of Lot 33, North Springdale intersected with a city alley that ran west out to Prospect Road. The 1968 Ordinance contained language reserving easements to the City of Peoria and to Central Illinois Light Company and its successors, for purposes of using and maintaining sewers and gas mains, respectively. (Ptf.'s Ex. 1).

Plaintiff Mary Burton purchased the home at 1333 East Nebraska Avenue (a.k.a. Lot 33 or "rental property") in 1975 with her husband, subject to the easements and restrictions of record for that parcel. (Burton Dep. at pp. 13-14; Burton Dep. Ex. 2). Plaintiff has since managed the home as a rental property. For the entire time that Plaintiff has owned Lot 33, members of the public have utilized the city alley immediately to the north of the lot and, in doing so, have driven upon the portion of old vacated North Springdale Street that adjoins Lot 33 on the lot's

2

east side ("Springdale Extension"). The public has done this routinely, even though a "No Outlet" sign is posted at the alley's entrance. (SMF ¶ 21).

Over the years, the City of Peoria has treated the Springdale Extension as a portion of the city alley that intersects with Prospect Road. (Ptf.'s Ex. 5; Haste Dep. at pp. 26, 29-30 ). City of Peoria road crews have regularly resurfaced the asphalt pavement of the Springdale Extension since 1975, and the city has plowed the Extension at times during the winter. (SMF ¶¶ 25, 27-28).

Plaintiff, on the other hand, has treated the Extension as her private driveway. To fend off the public, Plaintiff has, among other things, occasionally posted "no trespassing" or "private drive" signs at the Extension's entrance, but the signs have mysteriously disappeared soon after they were posted. (SMF ¶ 22). Plaintiff has allowed her tenants to park their cars on the Extension, although the rental property has its own parking lot to the rear of the building. (SMF ¶ 23, 83).

The divergent views of Plaintiff and of city employees, regarding ownership of the Extension, has led to tension. The first manifestation of that tension occurred about ten years ago when Plaintiff hired a contractor to do some work at the rental property ("Contractor Incident"). Plaintiff allowed the contractor to park on the Extension so that he could easily haul items into his truck. At that time, a Peoria City Code Officer came to the property and threatened the contractor with a ticket for blocking a public alley. The contractor was forced to move his truck off of the Extension. (Burton Dep. at pp. 35-36).

The tension between Plaintiff and the city came to a head on March 15, 2006, when a road crew employed by the City of Peoria Department of Street and Sewer began to perform maintenance on the Springdale Extension, pursuant to directions from officials in that department. (SMF ¶ 61). The crew included Defendants Hopkins, Clift, O'Keefe, and Moore. When the crew arrived at the area near Plaintiff's rental property that day, they found that a car was parked on the Extension. Because the car interfered with the planned maintenance, the police department was alerted, and Peoria police officer Mike Johnson soon arrived at the scene. Officer Johnson discovered that the car was registered to an address in Pekin and that it had not been reported stolen. As a result, Officer Johnson ticketed the vehicle for being abandoned and for blocking a city alley. The vehicle was towed. (SMF ¶ 41). The car, in fact, belonged to the daughter of one of Plaintiff's tenants.

After receiving a call from that tenant, Plaintiff drove to the rental property and discovered that the road crew was performing maintenance. She ordered the road workers to stop and had her tenant call the police. The crew stopped working until a police officer arrived. (SMF ¶ 48). Officer Johnson, the same officer that had issued the ticket earlier that day, arrived at the scene. Plaintiff explained to Officer Johnson that the Springdale Extension was her private drive and that city workers had no right to be performing maintenance on it. Officer Johnson, however, was under the impression that the Extension was a public alley. (SMF ¶ 51). He relayed this belief to Plaintiff, and a heated dispute erupted between the

4

two. Officer Johnson eventually told Plaintiff to take the issue up with City Hall, and he left the scene. It is unclear if the road crew resumed work on the Extension that day.

On or about March 16, 2006, Plaintiff called David Haste, the Street and Sewer Manager. To Haste's knowledge at that point, the Springdale Extension had always been a city alley. (SMF ¶ 60). When Haste checked the department's map, the map corroborated his belief. (SMF ¶ 65; Ptf.'s Ex. 5). Haste subsequently went to City Hall and checked the map on record at the City of Peoria Engineering Department. That map also indicated that the Extension was a city alley. (SMF ¶ 66).

Haste further investigated the issue and obtained information from the Peoria County Courthouse which led him to believe that the city's maps were mistaken. (SMF ¶ 67). Haste instructed the planner at the Street and Sewer Department to amend the department's map so as to reflect that the Springdale Extension was not a city alley. (Ptf.'s Ex. 5). Haste also had further conversations with Plaintiff, and these conversations led to the City of Peoria Traffic Department installing orange barrels to impede public access to the Extension. (SMF ¶ 68). The barrels have since been moved, and the public still uses the Extension. (SMF ¶ 69).

Later, on August 19, 2006, Officer Johnson noticed that two vehicles were parked on the Extension. One vehicle was a truck and an attached trailer with flat tires. The other was a Winnebago motor home that had no record on file and a license plate that was almost eight years out of date. Officer Johnson entered

5

onto the Extension and again issued tickets to the vehicles for blocking a city alley. (Ptf.'s Ex. 8).

On September 21, 2006, Plaintiff filed a Complaint in federal court seeking declaratory and injunctive relief as well as monetary damages based on the city's alleged interference with her ownership rights in the Springdale Extension. (Doc. 1). Plaintiff claimed that the city and the individual Defendants had effected an *ad hoc* taking of her property in violation of the Fifth Amendment. Plaintiff also alleged "class of one" equal protection claims under the Fourteenth Amendment as well as common law claims of trespass and of false imprisonment by Officer Johnson. Plaintiff filed an Amended Complaint on April 11, 2007 in which she identified the road workers who had been unnamed in her original Complaint. (Doc. 23). By Order of July 9, 2007, the Court dismissed without prejudice Count I of the Amended Complaint, which included Plaintiff's Fifth Amendment takings claim. (Doc. 36). On June 6, 2008, Defendants jointly filed the instant motion seeking summary judgment on Plaintiff's remaining equal protection claims (Doc. 50), set forth in Counts II and III, which are both brought pursuant to 42 U.S.C. § 1983.

## LEGAL STANDARD

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court as to portions of the

6

record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the movant has met its burden, to survive summary judgment, the "nonmovant must show through specific evidence that a triable issue of fact remains [as to] an issue on which [s]he bears the burden of proof at trial." Warsco v. Preferred Tech. Group, 258 F.3d 557, 563 (7th Cir. 2001); see also Celotex Corp., 477 U.S. at 322-24. "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." Chemsource, Inc. v. Hub Group, Inc., 106 F.3d 1358, 1361 (7th Cir. 1997). This Court must nonetheless "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989). In doing so, this Court is not "required to draw every conceivable inference from the record – only those inferences that are reasonable." Bank Leumi Le-Isreal, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991). Therefore, if the record before the court "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 796 (7th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

However, in ruling on a motion for summary judgment, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

## ANALYSIS

The following incidents form the bases of Plaintiff's claims in this litigation: (1) the Contractor Incident that occurred about ten years ago in which a Peoria City Code Officer forced a contractor who was working on Plaintiff's house to move his truck from the Springdale Extension and park it on the street; (2) a June 2004 incident in which the city towed a car belonging to one of Plaintiff's tenants because the car was parked on the Extension and was "blocking the alley;" (3) an incident on March 15, 2006 in which the City of Peoria towed another tenant's car for being parked on the Springdale Extension, so that the city could install asphalt paving; (4) the city road workers' and Officer Johnson's entering upon the Springdale Extension on March 15, 2006 and acting inconsistently with Plaintiff's alleged ownership of the tract; and (5) an incident that occurred on August 19, 2006 in which Officer Johnson issued two parking citations for "Blocking Alley" to a motor home and pick-up truck that were parked on the Springdale Extension.

Defendants seek summary judgment on the following issues: (1) that the city owned the Springdale Extension at all relevant time periods or, in the alternative, that city employees were acting within the scope of an easement when they took the actions about which Plaintiff complains; (2) that Plaintiff has produced insufficient evidence to establish her "class of one" equal protection claims under the

Fourteenth Amendment; (3) that Plaintiff is barred from advancing her claims by the doctrine of laches and, in the alternative, by the applicable statues of limitations; (4) that the individually named Defendants in this case are protected from section 1983 liability by the defense of qualified immunity; and (5) that Plaintiff has produced insufficient evidence to establish her state common law claims of trespass and false imprisonment.

I.  <u>Plaintiff's "Class of One" Claims under the Equal Protection Clause of the Fourteenth Amendment</u>

Defendants seek summary judgment on Counts II and III of the Amended Complaint, in which Plaintiff claims that the city and the individual Defendants violated her Fourteenth Amendment right to equal protection by treating her differently than other property owners in the City of Peoria and, specifically, other owners of property abutting the vacated North Springdale Street.  Defendants maintain that Plaintiff has failed to meet the evidentiary burden that the law imposes on plaintiffs who bring "class of one" equal protection suits under section 1983.  At issue is whether Plaintiff has come forward with sufficient evidence to show (1) that she has been intentionally treated differently than other similarly situated property owners and (2) that there is no rational basis for the difference in treatment, or that the cause of the differential treatment is Defendants' totally illegitimate animus against her.  See <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000); <u>Maulding Dev. LLC v. City of Springfield</u>, 453 F.3d 967, 970 (7th Cir. 2006), <u>cert. denied</u>, 127 S.Ct. 944.

The Court is persuaded by Defendants' argument on this issue. Plaintiff's burden, here, is an onerous one. See Maulding Dev., LLC, 453 F.3d at 970-71. The only evidence that Plaintiff offers in support of the "similarly situated" requirement is that the parcels to which she points are, like Lot 33, adjacent to North Springdale Street and that the owners of these parcels have paid taxes on portions of that vacated street. Based on that evidence alone, no reasonable jury could find that Plaintiff is similarly situated to these other property owners,[1] for "class of one" purposes, in the context of this case. See Aida Food and Liquor, Inc. v. City of Chicago, 439 F.3d 397, 403 (7th Cir. 2006). Further, Plaintiff has provided virtually no evidence as to the city's treatment of the owners of other lots abutting North Springdale. A fair comparison between Plaintiff and these other owners would require more detailed evidence about the owners, their relations with the city, and the characteristics and layouts of their respective parcels. Plaintiff did not meet her burden of producing that evidence.

Nor did Plaintiff meet the burden of showing that Officer Johnson's actions toward her were, at any point, the product of a vindictive desire to "get" her. Plaintiff may have disapproved of Officer Johnson's handling of the dispute on

---

[1] The Court assumes, without deciding, that Plaintiff is the owner of that portion of North Springdale Street immediately adjacent to the eastern boundary of Lot 33, continuing east to the street's centerline. See 65 Ill. Comp. Stat. § 5/11-91-2; see also City of Des Plaines v. Redella, 365 Ill. App.3d 68, 77 (1st Dist. 2006) (payment of taxes on a parcel is a factor indicative of private ownership); Piper v. Reder, 44 Ill. App.2d 431, 434 (1st Dist. 1963) (upon vacation of a public street, abutting landowners on both sides of the street acquire a fee interest up to the street's center point). The ultimate determination of who owns the Springdale Extension in fee, however, is more appropriately made by an Illinois state court in connection with Plaintiff's trespass claims.

March 15, 2006, but rudeness is no basis for a "class of one" equal protection claim under the Fourteenth Amendment. See Bell v. Duperrault, 367 F.3d 703, 709 (7th Cir. 2004). Plaintiff's equal protection claim against Officer Johnson is wholly unsupported by the evidence.

Therefore, the Court grants summary judgment to Defendants on Plaintiff's equal protection claims. Counts II and III of the Amended Complaint are dismissed. Because the Court has disposed of all of Plaintiff's section 1983 claims, the Court need not address the issues of municipal liability or qualified immunity.

II.     Plaintiff's Supplemental State Law Claims

The Court has dismissed Plaintiff's takings claim and her equal protection claims. The only claims remaining in this litigation are the supplemental state law claims of trespass and false imprisonment. In the Seventh Circuit, it is the usual practice of courts to dismiss, without prejudice, state supplemental claims when all federal claims have been dismissed prior to trial. Groce v. Eli Lilly & Co., 193 F.3d 496, 501 (7th Cir. 1999). Accordingly, the Court dismisses, without prejudice, Counts IV and V of the Amended Complaint and would advise Plaintiff to raise her trespass and false imprisonment claims in Illinois state court.

Determinations as to the ownership of the Springdale Extension and as to the existence and scope of easements acquired by the city were not necessary to the Court's ruling, in this Opinion, on Plaintiff's "class of one" equal protection claims. The Court granted summary judgment to Defendants on the equal protection claims based on Plaintiff's failure to produce evidence regarding other property and other

11

similarly situated owners of property. The Court's grant of summary judgment as to these federal claims was made without regard to whether or not Plaintiff was the owner of the Springdale Extension. As a result, the issues concerning ownership of the Extension and easements thereon are relevant and material, going forward, only as they relate to Plaintiff's supplemental state law claims. Those issues will be necessarily decided in state court, in connection with the state law claims – specifically the claims of trespass. Moreover, in any subsequent state court proceeding, Defendants may, at their election, reassert the defenses they have asserted in the instant summary judgment motion for purposes of attacking Plaintiff's claims of trespass and false imprisonment.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED, in part, and DENIED, in part. Specifically, the Court grants Defendants' motion as to Plaintiff's equal protection claims. Accordingly, Counts II and III of the Amended Complaint are dismissed. The Court, however, denies summary judgment to Defendants on the claims of trespass and false imprisonment. Because the trespass and false imprisonment claims, alleged in Counts IV and V, respectively, are the only claims that remain in this case, and because these claims are based on state common law, Counts IV and V of the Amended Complaint are hereby DISMISSED WITHOUT PREJUDICE. Plaintiff is advised to file these supplemental state law claims in state court.

CASE TERMINATED.

Entered this <u>31st</u> day of October, 2008.

<u>s/ Joe B. McDade</u>
JOE BILLY MCDADE
United States District Judge